**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000133
24-JUL-2017
04:18 PM**

NO. CAAP-13-0000133

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

WELLS FARGO BANK, N.A. AS TRUSTEE FOR OPTION
ONE MORTGAGE LOAN TRUST 2007-4 ASSET-BACKED
CERTIFICATES, SERIES 2007-4, Plaintiff-Appellant,
v.
DANIEL TSUKASA OMIYA, Defendant/Cross-Claimant-Appellee;
and
ASSOCIATION OF APARTMENT OWNERS OF ILIKAI APARTMENT BUILDING,
Defendant/Cross-Claim Defendant-Appellee,
and
JOHN DOES 1-20; JANE DOES 1-20; DOE PARTNERSHIPS 1-20;
DOE CORPORATIONS 1-20, and DOES GOVERNMENTAL UNITS 1-20,
Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-2345)

MEMORANDUM OPINION
(By: Reifurth, Presiding Judge, and Circuit Judge Ochiai, J.,
in place of Nakamura, C.J., Foley, Fujise, and Leonard, JJ.,
all recused, and Ginoza, J., dissenting)

In February 2009, Plaintiff-Appellant Wells Fargo Bank, N.S. as Trustee for Option One Mortgage Loan Trust 2007-4 Asset-Backed Certificates, Series 2007-4 ("Wells Fargo") foreclosed via a nonjudicial foreclosure sale on its mortgage lien against the subject property, located at 1777 Ala Moana Boulevard, Unit 1731, Honolulu, Hawaii 96815 (the "Property"). On March 30, 2009, a Mortgagee's Quitclaim Deed in favor of Wells Fargo and related to the Property was recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawai'i ("Land Court").

In 2010, Defendant/Cross-Claim Defendant/Appellee Association of Apartment Owners of Ilikai Apartment Building ("AOAO") foreclosed via a non-judicial foreclosure sale on the Property to recover outstanding AOAO dues owed by Wells Fargo. Defendant/Cross-Claimant/Appellee Daniel Tsukasa Omiya ("Omiya") was the successful high bidder at $15,000. The AOAO executed a Quitclaim Deed to Omiya, who recorded the deed in Land Court on September 15, 2010. The Land Court stamp appears on the Quitclaim Deed as follows:

```
            STATE OF HAWAII
      OFFICE OF ASSISTANT REGISTRAR
               RECORDED
        SEP 15, 2010    08:01 AM

           Doc No(s) 3999421
           on Cert(s) 940,974

        Issuance of Cert(s) 996,234
```

On November 3, 2010, Wells Fargo filed a Complaint against Omiya and the AOAO alleging that the AOAO gave defective notice of the power of sale foreclosure for the Property and that there were "no power of sale rights granted to [the AOAO] for it to have exercised." Accordingly, Wells Fargo argued, "the subsequent sale of the Property to [] Omiya was not conducted in accordance with applicable Hawaii law." The Complaint did not allege that Wells Fargo was current on its AOAO payments, or that it was making AOAO payments at all. Omiya filed a cross-claim against the AOAO and subsequently moved for summary judgment against Wells Fargo.

The Circuit Court of the First Circuit ("Circuit Court")[1] issued its Order Granting Defendant Daniel Tsukasa Omiya's Motion for Summary Judgment or, Alternatively, to Dismiss for Failure to Comply with Discovery Order, Filed December 21, 2011, filed March 29, 2012; Order Granting Defendant Daniel Tsukasa Omiya's Motion for Entry of [Hawai'i Rules of Civil Procedure ("HRCP")] Rule 54(b) Final Judgment, Filed April 18, 2012, filed June 6, 2012; and Amended Partial Final Judgment In Favor of Defendant Daniel Tsukasa Omiya, filed February 5, 2013

---

[1] The Honorable Edwin C. Nacino presided. This case was transferred from the Honorable R. Mark Browning to Judge Nacino on March 7, 2011.

("Amended Final Judgment"). Wells Fargo appeals from each of the two orders and the amended judgment.

On appeal, Wells Fargo contends that the Circuit Court erred in: (1) granting summary judgment in favor of Omiya despite evidence that Wells Fargo was current to the AOAO on its condominium fees at the time of the underlying foreclosure; (2) concluding that because a certificate number had been issued to Omiya, the case of *Aames Funding Corp. v. Mores*, 107 Hawai'i 95, 110 P.3d 1042 (2005) prevented Wells Fargo from challenging the AOAO's foreclosure of the subject property;[2/] (3) granting summary judgment in favor of Omiya despite evidence that the sale price of the subject property was so low that it shocked the conscience.

We affirm.

I.   BACKGROUND

Based on the allegations in the Complaint, Omiya sought discovery from Wells Fargo on the issue of notice provided by The AOAO and received by Wells Fargo, but Wells Fargo was either unresponsive or objected to Omiya's questions. Omiya filed a Motion to Compel Discovery, which the Circuit Court granted ("Discovery Order"). Wells Fargo did not comply with the Discovery Order and failed to produce documents or answer the interrogatories.

Omiya filed a notice of taking deposition upon oral examination pursuant to HRCP Rule 30(b)(6), which requested that Wells Fargo provide a representative to testify to, among other things, its "mail distribution policies in June 2010[.]" Omiya agreed twice to reschedule the HRCP Rule 30(b)(6) deposition, but refused Wells Fargo's third request to reschedule. On

---

[2/]   Wells Fargo did not argue on summary judgment below and does not argue on appeal that the Circuit Court erred in failing to conclude that The AOAO held no power of sale rights, or that the absence of such rights trump any subsequent issuance by the Land Court of a transfer certificate of title to Omiya. Furthermore, Wells Fargo does not appear to have raised the arguments in opposition to Omiya's motion for summary judgment. Therefore, we do not address those issues. *See Kondaur Capital Corp. v. Matsuyoshi*, 134 Hawai'i 342, 350, 341 P.3d 548, 556 (2014) (*quoting Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co.*, 100 Hawai'i 97, 108, 58 P.3d 608, 619 (2002) ("When reviewing a summary judgment, an appellate court's consideration of the record is limited to those materials that were considered by the trial court in ruling on the motion.")).

October 13, 2011, the day before the latest rescheduled deposition, Wells Fargo sent an email to Omiya, noting that counsel had been directed by her client to stipulate to its "receipt of notice of the [AOAO's] subject foreclosure sale[,]" expressed the expectation that this stipulation obviated the need to continue with the deposition, and reiterated that no representative would be appearing for the deposition. Omiya replied, noting that Wells Fargo's stipulation did not obviate the need for the deposition and, "[g]iven that no one will be appearing at the noticed deposition, we will take appropriate court action." On October 28, 2011, the Circuit Court entered an order approving the substitution of new counsel for Wells Fargo.

On December 21, 2011, Omiya filed his motion for summary judgment, arguing, among other things, that Wells Fargo could no longer contend that the AOAO's notice was defective in light of its stipulation to receipt of the notice. Wells Fargo opposed the motion, and alleged for the first time that "Plaintiff was paying the maintenance fees for the subject property. Therefore, [the AOAO's] foreclosure of the subject property is invalid as a matter of law." On January 18, 2012, Wells Fargo filed a non-hearing motion for leave to file a first amended complaint, to which Wells Fargo attached a proposed first amended complaint that alleged that Wells Fargo "paid all maintenance fees and other charges owed to [the AOAO] for the subject property[,]" and that "[the AOAO's] statements that [Wells Fargo] had failed to make payments [were] false."

On January 19, 2012, the Circuit Court held a hearing on Omiya's motion for summary judgment. The court explained that it would not consider Wells Fargo's pending motion for leave to amend the complaint, saying "I'm not going to allow you to amend it for the purposes of this motion here today, because that's not even before the Court. I think you filed it as an ex parte nonhearing motion." Wells Fargo argued that Omiya's title for the Property has not been filed with the Land Court and Omiya had not produced a hard copy of the transfer certificate of title ("TCT") confirming ownership, but the Circuit Court noted that Wells Fargo had admitted in its Complaint that Omiya filed with

4

the Land Court and had been issued a TCT. The Circuit Court also noted Wells Fargo's stipulation that it had received notice of the foreclosure sale, stating that "the dispositive issue to the Court is protection of an innocent buyer and if land court title has been issued." The court then continued the hearing for the limited purpose of addressing "land court issuance of the actual hard copy [of TCTs]."

On January 23, 2012, Wells Fargo filed a second non-hearing motion for leave to file a first amended complaint. In addition to the changes in the earlier version of the proposed first amended complaint, the newly-proposed first amended complaint removed the judicial admissions that Wells Fargo's Quitclaim Deed "resulted in the issuance of Transfer Certificate of Title No. 940,974 in the name of [Wells Fargo]" and that Omiya's Quitclaim Deed "resulted in the issuance of Transfer Certificate of Title No. 996,234 registering title in the name of Defendant Omiya."

On March 5, 2012, Omiya filed a supplemental declaration of Sandra Furukawa in support of his motion for summary judgment ("Furukawa Declaration"). Furukawa was a former Registrar of the Bureau of Conveyances and the Assistant Registrar of the Land Court before serving as the Special Projects Coordinator for Title Guaranty of Hawaii, Inc., where she served as the primary liaison between Title Guaranty and the Bureau of Conveyances and Land Court. In her declaration, Furukawa explained that "[t]he Office of the Assistant Registrar of the Land Court is now nearly four years behind in physically producing and certifying new [TCTs] for properties registered in the Land Court system. This backlog is common knowledge among those involved in the title industry." Furukawa further explained that "[t]he Bureau of Conveyances is also currently over three months behind in updating its Grantor/grantee index that is available to the general public to use to search for documents affecting title to properties in both the Regular System and Land Court System. . . . [T]here is currently an over three month 'gap' in the indexed information available to the general public to use to search for documents affecting titles to properties."

On March 21, 2012, the Circuit Court held its continued hearing to address the Land Court certificate issue. The Circuit Court determined that there were no genuine issues of material fact that the issuance of a new TCT number was sufficient to provide the conclusive effect of a physical certificate of title on the question of title to land as provided by *Aames*, 107 Hawai'i 95, 110 P.3d 1042, and Hawaii Revised Statutes ("HRS") Chapter 501, and granted summary judgment in favor of Omiya.

On June 20, 2012, the Circuit Court denied Wells Fargo's second non-hearing motion for leave to file a first amended complaint, but on June 25, 2010, granted Wells Fargo's first non-hearing motion for leave to file a first amended complaint. On July 6, 2012, Wells Fargo filed its First Amended Complaint.

On February 5, 2013, the Circuit Court issued the Amended Final Judgment in favor of Omiya. Wells Fargo timely appealed from the Amended Final Judgment to this court on March 5, 2013.

II. STANDARD OF REVIEW

*Summary Judgment*

This court reviews the Circuit Court's grant of Omiya's motion for summary judgment *de novo*. *Querubin v. Thronas*, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citing *Hawai'i Cnty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)).

With regard to the type of evidence that courts may consider in ruling on a summary judgment motion, we have explained that:

> A motion for summary judgment may be decided "only on the basis of admissible evidence." *Takaki v. Allied Mach. Corp.*, 87 Hawai'i 57, 69, 951 P.2d 507, 519 (1998). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of [HRCP Rule 56(e)] and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* (internal quotation marks and brackets omitted)(quoting 10 A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil* § 2722, at 58-60 (2d ed. 1983)).

*Freddy Nobriga Enters. v. State, Dep't of Hawaiian Home Lands*, 129 Hawai'i 123, 128, 295 P.3d 993, 998 (App. 2013).

III. DISCUSSION

A.   Wells Fargo's evidence that it was current in its
     obligation to the AOAO was correctly ignored by the
     Circuit Court in evaluating Omiya's motion for summary
     judgment.

     Wells Fargo contends that the Circuit Court erred in
granting summary judgment because Wells Fargo had presented
evidence that it was current on the amounts due and owing to the
AOAO on the Property.  This argument is without merit.

     The Hawai'i Rules of Civil Procedure require that "[a]
pleading which sets forth a claim for relief, . . . shall contain
(1) a short and plain statement of the claim showing that the
pleader is entitled to relief[.]"  Haw. R. Civ. P. 8(a)(1).  The
Hawai'i Supreme Court has stated that "Hawaii's rules of notice
pleading require that a complaint set forth a short and plain
statement of the claim that provides defendant with fair notice
of what the plaintiff's claim is and the grounds upon which the
claim rests."  *In re Genesys Data Tech., Inc.*, 95 Hawai'i 33, 41,
18 P.3d 895, 903 (2001) (citing Haw. R. Civ. P. 8(a) (1999); *Au
v. Au*, 63 Haw. 210, 220, 626 P.2d 173, 181 (1981)).  Further,
Hawai'i appellate courts have previously cited favorably to
federal cases holding that "[a] motion for leave to amend is not
a vehicle to circumvent summary judgment" and "[i]t is generally
inappropriate to grant leave to amend a complaint while summary
judgment is pending."  *Tokuhisa v. Cutter Mgmt. Co.*, 122 Hawai'i
181, 193, 223 P.3d 246, 258 (App. 2009) (quoting *Fed. Home Loan
Mort. Corp. v. Transamerica Ins. Co.*, 89 Hawai'i 157, 162, 969
P.2d 1275, 1280 (1998)) (holding that the trial court did not err
in declining to allow plaintiffs to amend their complaint to
clarify that their HRS chapter 480 claim pertained to the sale
and marketing of a vehicle theft registration system where
plaintiffs proposed to amend claims on which the court had
already granted summary judgment and had provided no explanation
for the delay).

     Wells Fargo's Complaint, did not allege that it was
current or making payments on AOAO dues for the Property.
Rather, the Complaint alleged only that AOAO's foreclosure
notices "were legally defective because [they were] not addressed

7

to the legal owner of the Property" and that the AOAO lacked any authority to foreclose. Wells Fargo, however, never raised the issue of the AOAO's authority to foreclose in response to the AOAO's foreclosure or to Omiya's motion for summary judgment and did not raise the current-on-payments issue until it filed its memorandum in opposition to Omiya's motion for summary judgment on January 11, 2012. Further, it did not seek to amend the Complaint until the day before the hearing on Omiya's motion for summary judgment.[3/]

In addition, Wells Fargo's newly-raised contention that it was making the required payments was supported by evidence that Wells Fargo did not produce in response to Omiya's multiple discovery requests, or the Discovery Order issued by the Circuit Court on November 22, 2011, to "fully produce all documents responsive to Omiya's First Request for Production of Documents[.]" Although Wells Fargo twice moved to amend the Complaint through an ex-parte non-hearing motion prior to the grant of summary judgment, Wells Fargo offered no explanation for the delay in doing so, and the Circuit Court's order granting Wells Fargo's first non-hearing motion for leave to include the payment allegations was not issued until after summary judgment was granted. Accordingly, the Circuit Court did not err when it granted Omiya's motion for summary judgment despite Wells Fargo's belated presentation of evidence to support its claim that it was current on its obligations to the AOAO. *See Tokuhisa*, 122 Hawai'i at 192-93, 223 P.3d at 257-58.

> B. The Circuit Court did not err when it applied Land Court protections to Omiya as the registered owner of Land Court property under TCT No. 996,234.

Wells Fargo asserts that Omiya did not demonstrate that *Aames* precluded it from challenging the non-judicial foreclosure. Specifically, Wells Fargo argues that a new TCT number is not the same as the issuance of a new TCT, and because no new certificate

---

[3/] We have been pointed to no evidence in the record or argument by counsel that Wells Fargo sought an order shortening time on the motion to amend (which was otherwise a non-hearing motion) or requested that the hearing on the motion for summary judgment be delayed until the motion to amend could be ruled upon.

of title had been issued in favor of Omiya, Omiya was not entitled to any protection under HRS chapter 501. Wells Fargo observes that a new TCT number alone does not include information which is contained in the actual certificate such as the names or identities of the owners of the real property, the property description, and a list of claims and encumbrances with respect to the property. In support of its argument, Wells Fargo refers to Land Court Rules 52 and 55; *In re Application of Bishop Tr. Co.*, 35 Haw. 816 (Terr. 1941); *Honolulu Memorial Park, Inc. v. City and Cty. of Honolulu*, 50 Haw. 189, 436 P.2d 207 (1967); and *Waikiki Malia Hotel, Inc. v. Kinkai Props. Ltd. P'ship*, 75 Haw. 370, 862 P.2d 1048 (1993). This argument is without merit. The cases and Land Court rules provided by Wells Fargo reiterate what should be included on a TCT, but fail to support its argument that Omiya must show a physical TCT, instead of only providing the newly-issued TCT number stamped on the Quitclaim Deed recorded at Land Court.

Land Court is a court of limited jurisdiction created for the special purpose of carrying into effect the Torrens title system of land registration. *See In re Estate of Campbell*, 66 Haw. 354, 662 P.2d 206 (1983). In recording a deed, pursuant to Land Court Rule 59, a purchaser must "present[] the deed which contains the proper number of the certificate of the land affected and also contains or has endorsed upon it a full memorandum of all encumbrances affecting the land, if any, or a statement that there are no outstanding encumbrances affecting the land[.]" Haw. Land Ct. R. 59(d). Thereafter, the assistant registrar shall note in the record the date of the instrument's reception, and the instrument shall be stamped with the date, hour, and minute of reception. Haw. Rev. Stat. § 501-107 (Supp. 2009). With that, the instrument "shall be regarded as registered from the date and time so noted[.]" *Id.* Consistent with that, a 1987 report from the State of Hawai'i, Legislative Reference Bureau discussing the consequences of backlog at the Bureau of Conveyances notes that it is "the act of registration" which "shall be the operative act to convey or affect the land."

9

Legis. Reference Bureau, Two Land Recording Systems, H.R. 47-7, at 19 (Haw. 1987).

Pursuant to HRS section 501-82, "every subsequent purchaser of registered land who takes a [TCT] for value and in good faith, hold the same free from all encumbrances except those noted on the certificate in the order of priority of recordation[.]" Haw. Rev. Stat. § 501-82(a) (Supp. 2009). HRS section 501-118, asserts that:

> In case of foreclosure by exercising the power of sale without a previous judgment, the affidavit required by chapter 667 shall be recorded with the assistant registrar. The purchaser or the purchaser's assigns at the foreclosure sale may thereupon at any time present the deed under the power of sale to the assistant registrar for recording and obtain a new certificate. Nothing in this chapter shall be construed to prevent the mortgagor or other person in interest from directly impeaching by action or otherwise, any foreclosure proceedings affecting registered land, prior to the entry of a new certificate of title.
>
> After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land.

Haw. Rev. Stat § 501-118 (2006).

Similarly, in *Aames*, where the mortgagee sued for ejectment of mortgagors following the default of their mortgage, a nonjudicial foreclosure sale, and the Land Court's issuance of a TCT to mortgagee, the court held that under HRS section 501-118, "a mortgagor's right to 'impeach[] . . . any foreclosure proceeding' is expressly limited to the period before entry of a new certificate of title." *Aames*, 107 Hawai'i at 101, 110 P.3d at 1048; Haw. Rev. Stat. § 501-88 (2006) (stating that "[t]he original certificate in the registration book, and any copy thereof duly certified under the signature of the registrar or assistant registrar, and the seal of the court, shall be received as evidence in all the courts of the State and shall be conclusive as to all matters contained therein, except otherwise provided in this chapter").

In this case, Omiya presented his Quitclaim Deed to the Land Court, which noted the names of the owners of the real property, the property description, and a list of claims and encumbrances with respect to the property. The Land Court then recorded Omiya's Quitclaim Deed, by stamping the recording date

of September 15, 2010, "Doc No(s) 3999421 on Cert(s) 940,974" and "Issuance of Cert(s) 996,234" on Omiya's Quitclaim Deed. The Land Court's delay in issuing the actual TCT was both evidenced by and explained in the Furukawa Declaration, which stated that "[t]he Office of the Assistant Registrar of the Land Court is now nearly four years behind in physically producing and certifying new [TCTs] for properties registered in the Land Court system."

Moreover, Wells Fargo is bound by its prior judicial admission that issuance of the TCT number in this case had the effect of registering title in Omiya's name. *See Lee v. Puamana Cmty. Ass'n*, 109 Hawai'i 561, 573, 128 P.3d 874, 886 (2006) (stating that "[i]t is well established that a party's factual allegation in a complaint or other pleading is a judicial admission which binds the party" (quoting *Int'l Bhd. of Elec. Workers, Local 1357 v. Haw. Tel. Co.*, 68 Haw. 316, 320 n.2, 713 P.2d 943, 949 n.2 (1986))).

Specifically, in its Complaint, Wells Fargo asserted

> 3. That Defendant DANIEL TSUKASA OMIYA ("Omiya"), husband of Sandra Sachiko Omiya, whose address is 1314 South King Street, Suite 1052, Honolulu, 96814 also claims to be the owner of the Property by virtue of that certain Quitclaim Deed filed on September 15, 2010 as Document No. 3999421 in the Office of the Assistant Registrar of the Land Court, State of Hawaii *which resulted in the issuance of Transfer Certificate of Title No. 996,234 registering title in the name of Defendant Omiya.*

(Emphasis added.) That the language above amounts to a judicial admission was evidenced when, later, Wells Fargo's counsel filed its second non-hearing motion for leave to file a first amended complaint and proposed to delete the highlighted text above from the paragraph 3 in the Complaint. Furthermore, during the January 19, 2012 hearing on Omiya's motion for summary judgment, Wells Fargo conceded that it made the above judicial admission in paragraph 3 of its Complaint, and the Circuit Court concurred. Wells Fargo requested that it be given leave to amend the Complaint to withdraw the admission, but the Circuit Court correctly declined to consider that request prior to deciding the motion for summary judgment.[4] Thus, Wells Fargo's assertion

---

[4]      Following its grant of summary judgment in favor of Omiya, the Circuit Court granted Wells Fargo's first non-hearing motion for leave to file
(continued...)

11

that issuance of the TCT number in this case had the effect of registering title in Omiya's name is a binding judicial admission. *See Lee*, 109 Hawai'i at 573, 128 P.3d at 886.

Although Wells Fargo's argument that issuance of a TCT number does not have the same effect as issuance of a physical TCT is not unreasonable, we conclude that, under the circumstances of the Land Court's current operations, which Wells Fargo does not challenge or contend it was unaware of, and in view of Wells Fargo's judicial admission that issuance of the TCT number in this case had the effect of registering title in Omiya's name, any challenge to Omiya's title should have been initiated prior to September 15, 2010, the date on which Transfer Certifiate of Title No. 996,234 was issued to Omiya.  Wells Fargo, however, did not file its Complaint until November 3, 2010, almost two months after the issuance of the TCT number to Omiya.

Accordingly, the Circuit Court did not err in granting summary judgment in favor of Omiya because there was no genuine issue of material fact as to Omiya's status as legal owner of the Property. *See Am. Home Mortg. Serv., Inc. v. Yeung*, No. 30057, 2011 WL 661794, *1 (Haw. Ct. App. Feb. 23, 2011) (this court, upon relying on the fact that a new TCT No. 940,642 was issued with no new physical TCT in evidence, applied the protections afforded in *Aames*); *Provident Funding Assocs., L.P. v. Vimahi*, No. 29797, 2010 WL 4491364, at *1-2 (Haw. Ct. App. Nov. 10, 2010) (where unlike in *Yeung*, this court did not note that there was no evidence challenging whether a TCT was actually issued, and later determined that appellee was "the registered owner of the subject property as evidence by TCT No. 918,819[,]" where"[a] Quitclaim Deed was recorded . . . as Document No. 3779868 and Transfer Certificate of Title [] No. 918,819").

---

[4]/(...continued)
a first amended complaint, which did not include the above changes to paragraph 3 of the Complaint, but denied Wells Fargo's second non-hearing motion for leave to file a first amended complaint.  Thus, at least during the time period encompassed by the record on appeal in this case, Wells Fargo's judicial admission remains boldly-stated in its Complaint.

C.    Wells Fargo's inadequate foreclosure price argument.

"[D]efenses to mortgages foreclosed upon by exercise of the mortgagee's power of sale must be raised 'prior to the entry of a new certificate of title." *Yeung*, 2011 WL 661794, at *1 (citing *Aames*, 107 Hawai'i at 102, 110 P.3d at 1049). Because we conclude that title to the Property became "conclusive and unimpeachable[,]" *Aames*, 107 Hawai'i at 103, 110 P.3d at 1050, at the time that the TCT number was issued, the inadequate foreclosure price argument was untimely raised and therefore we decline to address it further.[5]

## V.    DISPOSITION

Based on the foregoing, we affirm the Order Granting Defendant Daniel Tsukasa Omiya's Motion for Summary Judgment or, Alternatively, to Dismiss for Failure to Comply with Discovery Order, Filed December 21, 2011, filed March 29, 2012; the Order Granting Defendant Daniel Tsukasa Omiya's Motion for Entry of Rule 54(b) Final Judgment, Filed April 18, 2012, filed June 6, 2012; and the Amended Partial Final Judgment In Favor of Defendant Daniel Tsukasa Omiya, filed February 5, 2013, in the Circuit Court of the First Circuit.

DATED:    Honolulu, Hawai'i, July 24, 2017.

On the briefs:

Gary Y. Okuda
(Leu Okuda & Doi)
for Plaintiff-Appellant.

Charles A. Price and
Michelle J. Bento
(Koshiba Price Gruebner & Mau)
for Defendant-Appellee
Daniel Tsukasa Omiya.

Presiding Judge

Associate Judge

---

[5]    In reaching the issue of the allegedly inadequate foreclosure price, the dissent correctly notes that Omiya attached a 2010 tax assessment to his Quitclaim Deed. The 2010 tax assessment, however, was not submitted in relation to Omiya's motion for summary judgment. There, Wells Fargo relied on a 2012 tax assessment, which shows the Property's value after the non-judicial foreclosure sale took place. The Property's 2012 value has no bearing on the value of the Property at the time of Omiya's purchase in 2010. The Property's 2010 value was not argued at summary judgment as a basis for establishing an inadequate foreclosure price.